IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Paul Lane,                                        :

              Plaintiff               :        Civil Action 2:11-cv-00966

     v.                                           :

City of Pickerington, *et al.*,                   :        Magistrate Judge Abel

             Defendants             :

# DECISION

This matter is before the Court on defendant City of Pickerington Personnel Appeals Board and City of Pickerington's ("Pickerington defendants") March 28 2013 motion for summary judgment (doc. 32); defendants Mitch O'Brien, Michael D. Taylor and Linda Fersch's ("individual defendants") March 28, 2013 motion for summary judgment (doc. 35); and plaintiff Paul Lane's March 28, 2013 motion for partial summary judgment (doc. 37).

## I.      Overview

This lawsuit arises out of Pickerington firing Paul Lane in November 2009 from his job as an inspection administrator for having pornographic images on his work computer. The complaint pleads that defendants knew the charge was supported by false or insufficient information to justify termination of Lane's employment.[1] It also pleads that

---

[1] October 28, 2011 Complaint, ¶¶ 35 and 37, Doc. 2, PageID 7.

defendants terminated Lane's employment in retaliation for his association with and support of former City Manager Timothy Hansley, who was fired just days before Lane.[2] Lane sought a post-termination hearing before the Pickerington Personnel Appeals Board ("PAB"), but Pickerington denied the request, maintaining that he was an unclassified director level employee. Following lengthy litigation, the PAB determined that Lane was a classified employee, heard his appeal, and reduced his termination to a 30-day suspension.

The complaint pleads claims for unlawful retaliation for protected speech,[3] failing to provide post-deprivation due process,[4] and defamation.[5] Plaintiff's Combined Memorandum in Opposition to Defendants' Motions for Summary Judgment withdrew his retaliation claim and his defamation claims against defendants Fersch and O'Brien. He continues to assert defamation claims against defendants Taylor and the City of Pickerington.[6]

---

[2]Complaint ¶ 41, PageID 8.

[3] Complaint ¶¶41, 48, 49 and 57, PageID 8-9.

[4]Complaint ¶¶ 20-22, 58, 59 and 67, PageID 6–7 and 9.

[5]Complaint ¶¶ 68 and 69, PageID 10. There are no facts pleaded in the complaint identifying the allegedly defamatory statements.

[6]May 13, 2013 Memorandum in Opposition, at pp. 28, 35 fn 11, and 41, Doc. 43, PageID 1619, 1626, and 1632.

**II. Facts**

On August 30, 1999, Paul Lane began working for Pickerington as a construction inspection supervisor.[7]  In 2002, he was demoted to construction inspector.[8] Beginning informally in November 2004 and officially in November 2005, Lane was an inspection administrator.[9]

City manager Tim Hansley was Lane's boss.[10] Although Lane would call Hansley a friend, they did not see each other often outside the work environment.[11] Hansley was fired October 20, 2009.[12]  Shortly before he was fired, Hansley met with Lane and four other employees and told them that the mayor, Mitch O'Brien, wanted him to fire them.[13] Lane believes Hansley was fired because he refused to fire them.[14] Defendant Linda Fersch, Pickerington's personnel director, told the five not to worry, there were

---

[7]Paul Lane's August 1, 2012 Deposition ("Lane Dep."), Doc. 31, 16:17-20, 19:17-20 PageID 116 and 119.

[8]*Id.*, 20:21-12:1, PageID 120-21.

[9]*Id.*, 22:6-14, PageID 122.

[10]*Id.*, 26:12-17, PageID 126.

[11]*Id.*, 26:18-27:18, PageID 126-27.

[12]March 28, 2013 Declaration of Paul Lane ("Lane Decl."), ¶ 2, Doc. 37-1, PageID 1520.

[13]Lane Dep., 30:8-31:5, PageID 130-31. To the extent that Hansley's statement is offered for the truth of the matter asserted in it, it is hearsay. Lane testified that he believed mayor O'Brien told Taylor to fire him, but he has no proof of that. *Id.*, 92:6-94:1, PageID 192-94.

[14]*Id.*, 28:5-9, PageID 128.

3

always rumors.[15] Lane testified that Hansley was a good city manager and should not have been fired.[16]

On October 22, 2009, police chief Michael Taylor's first day as acting city manager,[17] he told Eric Vannatta to search Lane's computer.[18] Taylor testified that he ordered Lane's computer searched because "[t]here was a rumor that certain city employees [Lane, Steve Carr, and George Parsley[19]] were removing [erasing[20]] public documents from their computers."[21] He could not recall who he heard the rumor from.[22] He testified, "The rumor was Tim Hansley was saying these people . . . were removing public documents from their computers."[23]

---

[15]*Id.*, 36:22-37:1, PageID 136-37.

[16]*Id.*, 28:5-9, PageID 128.

[17]Taylor Dep., Ex. 33, doc. 31-9, PageID 1216.

[18]Lane Decl., ¶ 3; July 26, 2012 Deposition of Michael Taylor ("Taylor Dep."), 33:15-17, Doc. 31-9, PageID 964.

[19]Taylor Dep., 31:16-24, PageID 962.

[20]Taylor Dep., 35:14-22,pgid 966.

[21]*Id.*, 29:3-9, Doc. 31-9, PageID 960.

[22]*Id.*, 29:10-19 and 30:7-12, PageID 960-61.

[23]*Id.* 29:15-17

4

Vannatta suffered a stroke in 2010 that has eliminated his memory of many events over the 25 years before the stroke.[24] He has little recollection of the search. He does not remember what he was searching for or how he used Recuva software during the search.[25] He does recall burning a copy of pornographic images found on the computer to a CD.[26] Almost all the images were from June 28 and 30, 2005, some four and one-half years before the search.[27] Vannatta wrote a one-sentence October 23, 2009 memo to Taylor: "After using specialized software to retrieve images from Paul Lane's computer, it was noted that pornographic images were present on the hard drive."[28]

Several weeks later, Vannatta used Recuva software to inspect George Parsley's computer. Lane's and Parsley's computers were the only two computers Vannatta ever inspected during his career with Pickerington.[29]

Taylor testified that Vannatta told him he found no evidence any public documents were being erased from the searched computers. [30] But Vannatta said he found

---

[24]July 20, 2012 Deposition of Eric Vannatta ("Vannatta Dep."), 8:18-24 and 26:16-27:21, Doc. 35-1, PageID 733-34.

[25]*Id.*, 19:14-20:9, 20:10-17, 22:19-23:3, PageID 726-27, 729-30.

[26]*Id.*, 23:19-24:2 and 24:17-19, PageID 730-31.

[27]*Id.*, 43:14-44:3, PageID 750-51.

[28]November 12, 2012 Deposition of Gene M. Delp ("Delp Dep."), Doc. 31-7, 58:1-3 and Ex. 2, PageID 866 and 926.

[29]*Id.*, 36:12-14 and 41:2-6, PageID 743 and 748.

[30]Taylor Dep., 36:18-22, PageID 967.

around 30 pornographic images[31] and "he found numerous sites where sites where--numerous listings on the computer where Paul went to look at pornography."[32] Taylor further testified that Vannatta said there was a device on the computer that meant that what Lane was doing on the computer didn't get stored on the hard drive.[33]

City policy prohibits viewing pornography on city computers.[34] The city's inter-net guidelines prohibit using a computer to view pornographic, obscene, and sexually oriented images.[35]

At approximately 8:20 a.m. on October 29, 2009, Taylor gave Lane a predisciplin-ary notice[36] of an October 30 predisciplinary hearing.[37] Lane was not told that he might be terminated or that he had the right to be represented by an attorney at the  hearing.[38]

---

[31]*Id.*, 38:15-39:19, PageID 969-70.

[32]*Id.*, 37:7-11, PageID 968.

[33]*Id.*, 38:4-7, PageID 969. Vannatta testified that he did not remember whether Lane's computer had software or hardware that diverted information from the hard drive. Vannatta Dep., 29:14-20, PageID 736.

[34]Taylor Dep., 44:9-20, PageID 975.

[35]Lane Dep., 97:13-98:11 and Dep. Ex. 40, PageID 197-98 and 122-23.

[36]Taylor Dep., Ex. 34, Doc. 31-9, PageID 1217.

[37]Lane Decl., ¶¶ 6 and 9, PageID 1521; Lane Dep., 110:5-22, PageID 210.

[38]*Id.*, ¶ 7.

Taylor held the predisciplinary hearing which began at 10:00 a.m. on October 30,

2009. Personnel director Fersch was present, but did not participate.[39] Taylor asked Lane

to explain the pornography found on his computer.[40] Lane asked to see the images

found on his computer, and Taylor refused to show them to him.[41] Lane testified that he

told Taylor that he did not put pornography on the computer.[42] He further told Taylor

that "if there are any images, the only way I am aware there could be any would be

from checking my personal email. You open up something from a buddy and it's an off-

color joke and a picture of boobs . . . . I'm not aware of ever opening up any emails on

---

[39]Lane Dep., 112:10-17, PageID 212; Fersch Dep., 51:17-52:1, PageID 603-04. Fersch testified that Taylor did not ask for her opinion and she did not volunteer an opinion about whether Lane should be fired. She did recommend that he talk to the city's employment counsel. *Id.*, 54:17-55:7, PageID 606-07.

[40]*Id.*, 112:24-113:10, PageID 212-13.

[41]*Id.*, ¶¶ 9-10; Lane Dep., 113:15-16, PageID 213. The first time Lane saw the images was after he made a public records request. Lane Dep., 96:11-14, PageID 196. Taylor agrees that he did not provide the images to Lane, but he further testified that Lane did not ask for them during the hearing. Taylor Dep., 48:20-49:6, PageID 979-80. In contrast, Fersh testified that Lane asked to see the allegedly pornographic images and that Taylor said, "I can't do that." Fersch Dep., 59:3-17, PageID 611. For purposes of summary judgment, I assume Lane asked to see the images.

[42]Lane Dep., 76:6-8 and 76:13-14, PageID 176. Linda Fersch also testified that Lane denied the pornography was his. Fersch Dep., 102:2-7, PageID 654. However, she believed Lane "backpedaled when he later on said that he could have accidentally opened something." *Id.*, 102:11-13, PageID 654. Fersch testified that when first asked about pornography, Lane "sort of laughed it off, like this is ridiculous, you know." "And later on in the conversation, though, he did say he might have accidentally opened an e-mail, but he couldn't control what people sent him . . . ." *Id.*, 61:18-23 and 63:3-11, PageID 613 and 615.

my work computer."[43] Although his computer was password protected for login,[44] Lane testified that anyone could access his computer during the work day because he was often out of his office and his computer was on from 6:00-6:30 a.m. to 5:00-6:00 p.m.[45]

During the hearing, Taylor told Lane he had the option of resigning or being fired.[46] Lane testified that Taylor told him that he could resign and receive a good recommendation.[47] Lane asked to consider the offer over the weekend.[48] On Monday, Lane told Taylor he would not resign.[49] Taylor testified that he alone made the decision to fire Lane for looking at pornography on a work computer.[50]

On October 30, 2009, probably after the prediscilinary hearing, Taylor asked then Sgt. Gene Delp to witness Eric Vannatta examine Lane's computer.[51] Vannatta ran a

---

[43]*Id.*, 112:24-113:10, PageID 212-13. Taylor's testimony differs. He recalls Lane saying he pulled up his home email on his work computer "and it would be on the site." That is, he "recalled pulling up the sites." Taylor Dep., 51:10-52:6, PageID 982-83. Taylor did testify that Lane denied going to a website to view pornography. *Id.*, 54:9-18, PageID 985. For purposes of summary judgment, I accept Lane's testimony.

[44]*Id.*, 77:24-78:4, PageID 177-78.

[45]*Id.*, 76:19-77:4, PageID 176-77. Lane shared an office with tow other people. *Id.*, 77:22-23, PageID 177.

[46]*Id.*, ¶ 13. Taylor Dep., 22:4-11, PageID 953; Fersch Dep., 105:16-24, PageID 657.

[47]Lane Dep., 114:12-14, PageID 214.

[48]*Id.*, 115:3-6, PageID 215.

[49]*Id.*, ¶ 14.

[50]Taylor Dep., 17:8-11 and 18:20-19:5, PageID 948-50.

[51]Delp. Dep., 21:8-18, PageID 812.

program to search for deleted files and printed out a list of those files.[52] Vannatta told Delp he was looking for pornography.[53] Delp's recollection was that Vannatta found some cookies from pornography sites and history of internet visits to those sites. However, he did not include those findings in his report to Taylor, and that type of finding should have been included in the report.[54] Vannatta found U2 software on Lane's computer, which could have been used to run a web browser and other software without using the computer's hard drive.[55] A Google Chrome browser was also installed on the computer. That browser would permit the user to browse the internet anonymously without creating any entries on the internet history file.[56]

Delp  reported to Taylor that Vannatta found pornographic images that appeared to come from pornographic web sites. Taylor told him to write a summary report.[57] Delp wrote a report either that day or the next.[58] That report reads, in relevant part:

> Eric [Vannatta] provided computer tools which would recover deleted files, and showed me how he had used this software to recover appx. 30 files which indicated the computer had been used to access pornography over the internet. The files were still in the computer's hard drive, and

---

[52]*Id.*, 23:12-19 and 26:7-11, PageID 831 and 834.

[53]*Id.*, 25:2-9, PageID 833.

[54]*Id.*, 27:4-11, 28;4-9, 31:3-8, 83:22-84:20, PageID 835-36, 839, and 891-92.

[55]*Id.*, 31:9-33:10, PageID 839-41.

[56]*Id.*, 34:8-16, PageID 842.

[57]*Id.*, 37:1-9, PageID 845.

[58]*Id.*, 38:2-11, PageID 846.

were again located by the software provided by Eric Vannatta among 42,000 images which had been deleted from the computer. The pornography files were located in the Internet Explorer 5 temporary files and dated in 2005. The location of the files is consistent with files stored during the use of Internet Explorer. This is contrary to the claim from Mr. Lane that the files were delivered to his computer in an email. The history of Internet Explorer was set to save the internet browsing history for 999 days; however the only history on the computer was from the seven days prior to his pre-disciplinary meeting with Chief Taylor. I would conclude that Mr. Lane had cleaned the computer prior to examination by Eric and me.

I also discovered . . . that "U-3" software had been installed on the computer. This software is included on some thumb drives and allows for applications to be run directly from the thumb drive. These applications can include internet browsers, on-line chatting software, video players, etc. and can access the internet without leaving any trace on the computer hard drive.

Mr. Lane also had Google Chrome installed on his computer. This program is an internet browser capable of running in "Incognito Mode." This mode allows the user to browse the internet without saving any history or temporary files to the computer's hard drive.[59]

On November 5, 2009, Lane picked up from personnel director Fresch a letter terminating his employment.[60] Lane believes he may have been fired because he was perceived to be "too close to Tim" Hansley.[61] Plaintiff has proffered no evidence supporting that speculation.

---

[59]*Id.*, Ex. 3, PageID 927.

[60]Lane Dep., 102: 2-6, PageID 202.

[61]*Id.*, 106:19-107:23, PageID 206-07.

On November 2, 2009, Taylor issued a letter terminating Lane that was based on false and/or misleading statements made by Fersch and others.[62] On November 17, 2009, Lane submitted a request for hearing before the Personnel Appeals Board.[63] Defendants notified plaintiff that he was not a classified employee and that the PAB did not have jurisdiction over his appeal.[64] Lane was denied his right to due process because defendants failed to comply with the Section 9.03 of Pickerington City Ordinances.[65] Defendants violated their clear duty to provide Lane with post-deprivation due process to conduct a hearing and to issue a determination on the merits of his appeal.[66]

In 2010, Lane filed a mandamus action in the Ohio Court of Appeals for the Fifth Appellate District demanding that defendants be ordered to provide Lane a hearing on the charges against him and an opportunity to obtain a final appealable order.[67] The appellate court denied the request for a writ, but the Ohio Supreme Court decided that defendants should have issued a final appealable order on Lane's request for a hearing.[68]

---

[62]October 28, 2011 Complaint, at ¶ 35, Doc. 2, PageID 7.

[63]*Id.* at ¶ 14, PageID 5.

[64]*Id.* at ¶ 15, PageID 5-6.

[65]*Id.* at ¶¶ 17-18, PageID 6

[66]*Id.* at ¶ 20.

[67]*Id.* at ¶ 26, PageID 7.

[68] *Id.* at ¶ 27.

Lane testified that he was defamed by a newspaper article that said he admitted possession of pornography and because "I was on 10TV."[69]

On December 4, 2009, Taylor wrote a letter to the Ohio Bureau of Unemployment Compensation in response to a question asking for "additional information you might have significan[t] to the separation."[70] The letter stated, in relevant part:

> When Paul's computer was checked, it was determined there was 40,000 "hits" on the computer where he went to the Internet looking at various things and approximately 30 pictures were pornographic. When questioned, Paul admitted to looking at the pictures but stated that he was just checking his home E-mail at work, and when he opened the mail, it was determined to be pornographic. (30 different times?) If so, why not erase from the computer once determined? Also, he was using different software to access the sites (to avoid a record on the hard drive), which was not authorized. It was determined later this was not accurate, as the site had to be directly accessed, see enclosed print out of the internet site and photo.

> Additionally, in regards to sexual harassment with other employees. He made comments alleged about masturbation to a female employee, made an alleged sexual comment to another employee her breasts, and was allegedly changing his pants in his office with the door opened and was witnessed by yet another female, and his comment was it was ok, I have boxer shorts on.

> Paul also made for somewhat of a uncomfortable, non conducive work atmosphere. He allegedly would change into exercise clothes while at work, he pushed open[] the bathroom door of the men's room to witness other men going to the restroom. He allegedly invaded the female employees' personal space by walking right up to them or walk[ing] up behind them.

---

[69]Lane Dep., 116:10-11, PageID 216.

[70]Fersch Dep. 47:22-48:17 and Ex. 1, PageID 599-600 and 694-96.

12

I interviewed several different employees and received the same comments about Paul Lane. He would leave the office, stay gone for hours at a time, not come in until late and not advise anyone. It was difficult to schedule appointments, as the secretary would not know where he was or when he would be in many times. I also determined no one really knew what he did for a job. I questioned 5-6 people and they couldn't advise what he really did. Although he was the "Building Administrator" he did very few if any administrative duties.

As for prior discipline, he received none due to the two past city managers would not administer discipline. Numerous complaints were taken to the two previous city managers and no action was taken, not even any documents in his file.

Upon initial complaints about Paul, I found them to be sustained. The female workers were on edge, and felt very uncomfortable working with him. One female employee was so concerned, she felt she should go outside and around the building through the back door to the restroom to avoid walking past his office.

After talking to numerous people, I determined there was a atmosphere created by Paul that was non conducive to a good working environment. Changing clothes in an office that was witnessed by female employees, making sexual comments to a female employee, invading personal space, making comments about a female's breasts to her, all this hardly constitutes a health work environment. I consider the city fortunate a sexual harassment suit was not imposed by the female workers of the city due to lack of action on two prior city managers' actions.

### III.     Arguments of the Parties

####     A.     Pickerington Defendants

The Pickerington defendants argue that the City of Pickerington Personnel Appeals Board should be dismissed because it is not an entity capable of being sued. The Personnel Appeals Board is a Civil Service Commission organized under section

124.40 of the Ohio Revised Code and the City's charter. It is a department of the City operated under City Council, and it has no separate legal existence apart from the City.

The Pickerington defendants also argue that plaintiff cannot maintain his First Amendment claim because he cannot show that he engaged in any protected speech and that his speech was related to his termination. Plaintiff bases his First Amendment claim on his support of the former city manager, Tim Hansley, who was terminated October 20, 2009. When questioned in his deposition regarding what statements he made, plaintiff could only identify a general comment made to one employee prior to Hansley's termination indicating that he believed that Hansley was a good boss. Plaintiff could not recall or identify any other speech he engaged in regarding Hansley. Defendants argue that plaintiff's isolated comment that he felt no one would be able to replace Hansley was not on a matter of public concern and was not protected speech.

The Pickerington defendants argue that plaintiff cannot establish a causal connection between his speech and his termination. Plaintiff was not aware of anyone overhearing his comment regarding Hansley, and he acknowledged that he did not engage in any speech after his termination. The Pickerington defendants maintain that there is no evidence that the sole decision maker, Michael Taylor, or anyone else in an upper level position at the City was aware of plaintiff's sole comment in support of Hansley. Plaintiff also has no evidence that any employee who was allegedly too close to Hansley suffered any negative effects as a result of that association. The Pickerington defendants further maintain that plaintiff would have been terminated regardless of

14

any protected speech for viewing and downloading pornography on his work computer.

Defendants further argue that plaintiff's procedural due process should be dismissed because he cannot establish that he had inadequate state law remedies. Plaintiff alleges that he was denied access to the Personnel Appeals Board and his right to a post-termination hearing, but he had an adequate state law remedy for the alleged deprivation through a mandamus action. Plaintiff filed a mandamus action, and, as a result of that action, plaintiff received a hearing in front of the Personnel Appeals Board. Because plaintiff had an adequate state law remedy for his alleged denial of post-deprivation due process, he cannot maintain a Section 1983 claim.

The Pickerington defendants maintain that plaintiff has received all of the process due under the law. Plaintiff received the disputed hearing before the Personnel Appeals Board on November 29, 2012. Although there was a delay in providing the hearing, a delay in process is not actionable.

Defendants argue that they are entitled to judgment in their favor on plaintiff's defamation claims because the statements were protected by qualified privilege and substantially true. Even if the statements were otherwise actionable, they are not actionable as a matter of law as they inflicted only nominal or non-existent incremental harm. Plaintiff's defamation claim is based on alleged statements made by Taylor. The Pickerington defendants maintain that plaintiff fails to allege that any statements were made by the City of Pickerington or the Pickerington Personnel Appeals Board.

### B.    Individual Defendants

The individual defendants argue that they did not retaliate against plaintiff for his speech. The individual defendants maintain that plaintiff's speech was not protected because it did not touch a matter of public concern. Plaintiff made his statements internally to coworkers, rather than to the public. Even if plaintiff's speech did touch on a matter of public concern, plaintiff cannot demonstrate that he was terminated due to his speech. It was Taylor's decision to terminate plaintiff. Chief Taylor did not have any role in terminating Hansley. Taylor testified that he terminated plaintiff for violating the technology policy by viewing pornography on a City computer, and plaintiff's speech was not a substantial or motivating factor in his decision to terminate plaintiff.

The individual defendants argue that plaintiff's claim upon his association with Hansley fails for similar reasons. Defendants argue that association, like speech, has to touch on a matter of public concern in order to be constitutionally protected. Plaintiff asserts that he and Hansley were friends and went out to lunch together on a monthly basis, but they rarely associated with one another outside of work. Defendants maintain that plaintiff was never prohibited from associating with Hansley, and he was not terminated due to his association with Hansley.

The individual defendants maintain that they are entitled to qualified immunity. They further argue that they cannot be liable for defamation because they are barred by the statute of limitations. They further argue that Taylor's statements are not defamatory. They contend that they are immune and the statements were privileged. Plaintiff

16

cannot show clear and convincing evidence that the communication was made with actual malice in order to overcome defendants' qualified privilege. Defendants maintain the Taylor's statements were from information gleaned from the investigation, and he had no knowledge that any statement he made was allegedly false. Plaintiff never testified that he denied viewing pornography on a City computer. Plaintiff also acknowledged that other statements made by Taylor were not false.

### C. Plaintiff's Response to Defendants' Motions for Summary Judgment[71]

Plaintiff argues that for a classified public employee with a property interest in continued employment, due process requires a pre-deprivation hearing for which he is given sufficient advance notice, notice of the level of discipline that may be imposed, information about the charges against him, and at least an explanation of the employer's evidence. Plaintiff maintains that he received none of these. Lane argues that he need not show that the state procedures were inadequate to succeed on his due process claim. It is undisputed that plaintiff was not provided a hearing in which to oppose his termination until more than three years after he was fired.

On October 2009, Hansley was terminated as the city manager, and Michael Taylor, chief of police for the City, was appointed as the acting city manager. Plaintiff believes that Hansley was terminated in part over his refusal to terminate Lane. Lane

---

[71]Plaintiff agrees that the Pickerington Personnel Appeals Board is not sui juris and should be dismissed from this action. Plaintiff also notes that his defamation claims are not brought against Mayor O'Brien or Linda Fersch. Plaintiff indicates that he withdraws his claims for unlawful retaliation due to protected speech or association.

believes that Taylor was appointed in an effort to manufacture a basis for terminating plaintiff.

On his first day as city manager, Taylor ordered the inspection of plaintiff's computer allegedly based on a rumor that Lane was removing public documents from his computer. Eric Vannatta performed a search of Lane's computer using Recuva software. Vannatta testified that he did not know if Recuva could determine if public records had been destroyed or deleted. Vannatta found no evidence of any destruction of public records, but he did unearth approximately thirty inappropriate images on Lane's computer. The images were accessed on June 28, 2005 at 8:33 a.m. and on June 30, 2005 between 6:16 a.m. and 6:19 a.m. The inspection did not detect any pornography on his computer for the preceding four years. According to plaintiff, Taylor continued to attempt to create a basis for terminating him and spoke to a number of women who worked in his building and instructed them to file written complaints about him.

Plaintiff was given notice that he would have a pre-disciplinary hearing the following day. He was not informed of the possible discipline or warned that he might be terminated. Lane was also not told of his right to have counsel present. Lane asked to see the images found on his computer, but Taylor refused to provide them. Lane had to defend himself without any information about what the images were or when they were accessed, viewed or downloaded.

Following his termination, Lane sought to appeal the decision to the PAB. The city law director informed him that he was "unclassified" and did not have the right to

18

file an appeal before the Board. Lane was forced to file a mandamus action with the Fairfield County Court of Appeals. Lane appealed the appellate court's decision to the Ohio Supreme Court, which reversed the decision of the Court of Appeals. On May 29, 2012, the Board ruled that Lane was a classified employee. On November 29, 2012, Lane was given his hearing on the merits before the Board. The Board reversed the decision to terminate Lane.

Plaintiff contends that his procedural due process rights were violated because defendants failed to provide proper due process protections before and during his pre-disciplinary hearing, failed to inform him of the grounds for his termination, and failed to provide him with a timely post-disciplinary hearing. Plaintiff argues that in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme court recognized the due process protections enjoed by classified public employees and established that failure to provide such protections violated the Fourteenth Amendment. Plaintiff argues that defendants have ignored the *Loudermill* and have mistakenly relied on *Parratt v. Taylor*, 451 U.S. 527 (1981). Plaintiff maintain that the *Parratt* rule is applicable in situations where a pre-deprivation hearing was impracticable due to a random, unauthorized act.

Plaintiff argues that defendants have waived their statute of limitations defense by not raising it in their answer. Plaintiff further argues that his defamation claims must be presented to a jury. Plaintiff maintains that Taylor lied about him repeatedly and egregiously. Plaintiff maintains that Taylor lied when he:

(1) stated in a memorandum to Fersch that Lane admitted to looking at pornography on City computers; (2) stated in a memorandum to Fersch that Lane looked at pornography approximately 30 times; (3) stated in a memorandum to Fersch that Lane's viewing of web sites with pornography created a hostile working environment; (4) stated to Nate Ellis, a newspaper reporter, that the images found on Lane's computer were "clearly" pornographic; (5) informed the State of Ohio that Lane admitted to viewing the pictures in questions; (6) informed the State of Ohio that Lane sexually harassed his female colleagues; and, (6) informed the State of Ohio that Taylor found the complaints about Lane's conduct sustained when he did nothing to investigate them and had no basis to assert that the complaints were sustained.

Under Ohio law, plaintiff need only prove that Taylor made a false publication which injured plaintiff's reputation. Lane argues that Taylor is not immune because he acted with the necessary level of culpability to overcome the immunity and privilege defenses that he asserts. In both the termination memo to Linda Fersch and the report to the State of Ohio, Taylor stated that Lane admitted to being responsible for the offensive images found on his computer. But plaintiff and Linda Fersch, the only other people present at the meeting, deny that Lane admitted any such responsibility. Plaintiff maintains based on these facts alone, a jury could decide that Taylor's statement that plaintiff admitted to being responsible for the images is false. Lying about Lane's statement constitutes actual malice because it was made with knowledge that the statement was false. In his termination memo and the report to the State of Ohio, Taylor also stated that

plaintiff looked at pornography at work approximately thirty times, but the computer investigation revealed no such thing. Taylor also acknowledged that some of the images were not pornographic although he previously called the images clearly pornographic. Taylor reported that the allegations of sexual harassment had been sustained, although in his deposition he acknowledged that he did not investigate the allegations against Lane.

Plaintiff argues that the City, as Taylor's employer, is liable for Taylor's defamation under the doctrine of respondeat superior.

### IV.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

V.     **Discussion**

     A.     **Procedural Due Process**

Plaintiff asserts that he was denied procedural due process because defendants failed to provide him an explanation of the evidence against him and notice of the potential discipline to be imposed. Plaintiff also maintains that he was not provided notice of the charges on which his potential discipline would be based. Plaintiff contends that he was terminated in part due to allegations against him of sexual harassment contributing to a hostile work environment, but Lane was only given notice that he faced disciplinary action for pornographic materials on his computer.

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) the Supreme Court held that the requirements of due process are notice and an opportunity to respond. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 546. Defendants argue that because plaintiff had adequate post-deprivation remedies under state law, his due process rights were not violated.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim unless the State fails to provide an adequate post-deprivation remedy. In situations involving an employee's random, unauthorized conduct, the State cannot predict and guard in advance against a deprivation, and a post-deprivation tort remedy is all the

23

process the State can be expected to provide. In *Zinermon v. Burch*, 494 U.S. 113, 132

(1990), the Supreme Court stated that the nature of the deprivation complained of must

be examined and the circumstances under which the deprivation occurred in order to

determine whether the rule of *Parratt* applies to defeat a liberty interest claim.

Plaintiff argues that *Parratt* is not applicable because Lane's termination was not

random and unpredictable making a pre-deprivation hearing not feasible. Rather, a pre-

deprivation was held. Plaintiff contends, however, that the pre-deprivation hearing did

not comport with due process requirements.

Plaintiff may prevail on a procedural due process claim by

(1) demonstrating that he is deprived of property as a result of established
state procedure that itself violates due process rights; or (2) by proving
that the defendants deprived him of property pursuant to a "random and
unauthorized act" and that available state remedies would not adequately
compensate for the loss. *Collins*, 892 F.2d at 497, citing *Davis v. Robbs*, 794
F.2d 1129 (6th Cir.1986). *Parratt* is applied to those cases falling under the
second category.

*Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). In *Parratt* cases, pre-deprivation

remedies are impossible. Here, there was a pre-deprivation process, and the *Parratt* rule

is not applicable. *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir.1988)("Since any predep-

rivation actions taken in the instant case were done pursuant to established state pro-

cedures, the district court erred in applying *Parratt*. In reaching this conclusion, we are

not swayed by the appellees' argument that any conduct by the state actors which viol-

ated due process was necessarily random and not authorized since the state procedures

on their face comport with due process."). Because plaintiff asserts that the pre-depriva-

24

tion process failed to comport with the requisites of due process, the Court must evaluate whether that process comported with due process.

> The traditional standard for the constitutionality of a particular procedure focuses on three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Moore v. Board of Educ. of Johnson City Schools*, 134 F.3d 781, 785 (6th Cir. 1998)(quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Lane argues that defendants failed to provide him with sufficient notice of the hearing to permit him to prepare, failed to advise him of his right to have counsel at the hearing, and failed to provide him with sufficient time to secure counsel for the hearing. Lane also maintains that defendants failed to inform him that he could be terminated and failed to provide him with the charges against him. Lane was not told how many pictures there were, where on the hard drive they were found, what the content of the pictures were, or when they were downloaded, accessed, viewed or saved.

Here, plaintiff received written notice of the hearing and was given an opportunity to be heard. Although he was not provided with the evidence, he was provided with a description of the evidence.

The Notice of Predisciplinary Conference dated October 28, 2009 identified the alleged offense as "Violation of Technology, Section 2; unacceptable and personal use,"

and the summary of charges stated, "[p]rohibited use of the internet viewing and re-
taining of pornographic materials on city computer. Misuse of city property in an in-
appropriate and offensive manner." Doc. 31-9 at PageID 1217. Plaintiff was instructed
that he had the right to appear at the conference and present an oral or written state-
ment in his defense, or he could elect in writing to waive his opportunity to have a
predisciplinary conference by signing a form. *Id.*

In his deposition, Taylor testified that the sole reason for firing Lane was that he
viewed pornography on his work computer. Taylor Dep. 19:1-6; Doc. 31-9 at PageID
950. Taylor testified that allegations concerning sexual harassment were not discussed
in the predisciplinary hearing. *Id.* 61:5-13; Doc. 31-9 at PageID 992. Taylor spoke to the
women making the allegations prior to the predisciplinary hearing. *Id.* at 71:4-17; Doc.
31-9 at PageID 1002. Taylor received written statements from women concerning alle-
gations of sexual harassment after he had already terminated Lane. He did not investi-
gate those allegations. *Id.* 68:4-70:14; Doc. 31-9 at PageID 999-1001.

Taylor testified that when he gave Lane the notice, he did not tell him anything
else about the charges. He told him that it was his predisciplinary hearing and that he
had the right to bring counsel with him. *Id.* at 158:4-19.

Although Taylor testified that the presence of pornography on Lane's work com-
puter was the sole basis for his termination, plaintiff argues that the evidence demon-
strates that Taylor also relied on other grounds for his decision. In his November 2, 2009
termination memorandum to the personnel director, Linda Fersch, Taylor stated that

26

Lane created a hostile work environment that made women feel uneasy in his presence. Taylor Dep. Exh. 36 at Doc. 31-9 at PageID at 1219. An October 28, 2009 unaddressed and unsigned memorandum included allegations that Lane had left a Playboy magazine article on the copier, he changed his pants with his office door open, he engaged in an offensive conversation about masturbation, and he commented on a coworker's breasts. Taylor Dep. Exh. 46 at Doc. 31-9 at PageID at 1239-40.

In a December 4, 2009 letter addressed to "To Whom it may concern" Taylor elaborated on additional information that may have "significance to the separation." In this letter, Taylor discussed allegations concerning sexual harassment and Lane's conduct that "made for somewhat of a uncomfortable, non conducive work atmosphere" as described in his termination memorandum. Taylor Dep. Exh. 37 at Doc. 31-9 at PageID at 1220-21. Taylor also stated that he had interviewed several different employees who reported that Lane would leave the office, be absent for hours at a time, and not return until much later. It was difficult to schedule appointments because the secretary would not know his schedule. He further stated that "no one really knew what he did for a job." *Id.*

Taylor found the initial complaints about Lane to be sustained. He stated that the female employees were on edge and felt uncomfortable around Lane. One female employee was so bothered by Lane that she would go outside around the building and come in a back door to get to the restroom rather than walk past Lane's office. Taylor concluded that Lane created an atmosphere at work that was not conducive to a good

working environment. *Id.* Lane argues that as a result of these representations to the State of Ohio, defendants are estopped from denying that these allegations played a role in the decision to terminate him.

The parties do not dispute that plaintiff had a property interest in his continued employment.[72] Defendants, therefore, could not deprive Lane of that property right without due process. *Loudermill* established the minimal protections a public employee is entitled to in a pretermination proceeding. An employee such as Lane is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. The "opportunity to respond must be a meaningful opportunity to prevent the deprivation from occurring. *Buckner v. City of Highland Park*, 901 F.2d 491, 495 (6th Cir. 1990).

In *McDaniel v. Princeton City School District Board of Education*, 45 Fed. Appx 354 (6th Cir. 2002), the Sixth Circuit considered whether a school teacher's due process

---

[72]

"Such property rights are not created by the Constitution itself. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "Frequently a public employee can point to a statute as giving him a protected property interest in the job he holds." *Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir.2002).

*McDaniel v. Princeton City School Dist. Bd. of Educ.*, 45 Fed. Appx. 354, 357, 2002 WL 1893558, at *3 (6th Cir. 2002). Here, plaintiff asserts that as a classified civil service employee, he had a constitutionally protected property interest in his employment and was entitled to due process under the Constitution of the State of Ohio, Article II, Section 34, and Article XV, Section 10.

28

rights were violated when the defendant failed to notify her of three of the specific charges against her. McDaniel was noted that a predisciplinary hearing concerning her attendance pattern, failure to remain in the classroom, excessive personal calls on work time, and neglect of duty. Following the predisciplinary hearing, McDaniel was discharged for a pattern of neglect of duty that included the specific charges that she lacked lesson plans, lacked student behavior plans, and inappropriately disciplined students. None of these specific charges, however were included in the notice of the hearing. As a result, the Sixth Circuit ruled that defendants denied McDaniel the opportunity to respond to these charges prior to her termination, which was based, at least in part, on these charges.

Plaintiff also argues that defendants violated Lane's due process rights by failing to provide him with a timely appeal of the merits of his termination. Lane was not provided with a hearing on the merits of the termination until three years after he was terminated. He maintains that a three-year delay in providing him with a post-deprivation hearing was impermissible.

The individual defendants argue that plaintiff failed to plead any pre-termination due process allegations in his complaint. The individual defendants maintain that in his motion for partial summary judgment, plaintiff seeks judgment on claims he never asserted in his complaint. Rather, the factual allegations in his complaint solely focus on incidents that occurred after Lane's termination. In response plaintiff maintains that defendants had notice of the claims through the course of proceedings and

29

that their statements to the contrary are disingenuous. Plaintiff maintains that defend-

ants were on notice of the scope of his claims based on his deposition, the depositions of

Taylor and Fersch, and written discovery exchanged in this case.

Plaintiff relies on *Harris v. City of Circleville*, No. 2:04-cv-1051, 2008 WL 211363

(S.D. Ohio Jan. 23, 2008). The *Harris* Court concluded that the allegation in the com-

plaint that stated "[a]s a direct proximate result of being taken to the floor by the

defendant officers *and other force applied by the defendant officers,* plaintiff suffered bodily

injury," was sufficient to put defendants on notice that force was not necessarily limited

to what occurred during the takedown maneuver. *Id*. at \*7 (emphasis in original). The

*Harris* Court also relied on plaintiff's deposition testimony about the additional alleged

uses of force and concluded that defendants could not show any prejudice.

The Sixth Circuit has applied a "course of proceedings" test to determine wheth-

er defendants in a Section 1983 action have received notice of the plaintiff's claims

where the complaint is ambiguous. *Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir.

2005)(citing *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001)). Here, there is no

ambiguity. The complaint alleges due process violations only with respect to the post-

deprivation proceedings. There is simply no indication from the complaint that plaintiff

intended to pursue a claim based on violations of his due process rights with respect to

the pre-deprivation proceedings.

<u>Post-deprivation due process</u>. Defendants did not violate plaintiff's due process rights with respect to the post-deprivation hearing. The due process clause is a guarantee of fair procedure, and state remedies may provide adequate due process.

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. Parratt, 451 U.S., at 537, 101 S.Ct., at 1913; Carey v. Piphus, 435 U.S. 247, 259, 98 S. Ct. 1042, 1050, 55 L.Ed.2d 252 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property"). The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch*,  494 U.S. 113, 125-126 (1990)(Footnote omitted.) Here, plaintiff received all the process that was due. Although plaintiff argues that the length of time it took to obtain a hearing before the PAB resulted in a violation of his constitutional rights, he cites no case law supporting that proposition. Plaintiff sought relief from the state through a mandamus action, and ultimately he obtained the relief he requested. Plaintiff attempts to distinguish this case from other cases where courts have held that the available of a state law remedy is sufficient. Plaintiff maintains that because his mandamus action was not an attempt to get his job back, but rather an attempt to obtain the process that he was due, i.e., a hearing before the PAB, the state remedies did not address the underlying violation of his due process rights. Plaintiff fails to cite to any

case law that makes this distinction. Furthermore, plaintiff did ultimately obtain the process that he sought through the mandamus action. The delay in obtaining a hearing before the PAB, did not violate his constitutional rights. Plaintiff had a means for obtaining the process he was due through a writ of mandamus. Ultimately, he obtained the relief he sought.  Plaintiff received all the process to which he was entitled. Defendants' motion for summary judgment on plaintiff's claim based on violations of his procedural due process rights is GRANTED. Plaintiff's partial motion for summary judgment is DENIED.

## B.    Defamation

Ohio law defines libel as "a false and malicious publication made with the intent to injure a person's reputation or expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade or profession." *Natl. Medic Serv. Corp. v. E.W. Scripps Co.,*  61 Ohio App.3d 752, 755 (Ohio App.,1989)(citing *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.,* 43 Ohio App.2d 105, 107 (Ohio App. 1974). To survive a motion for summary judgment, plaintiff must show the existence of all the essential elements in a libel action, which are falsity, defamation, publication, injury and fault. *Id.*

 Defendants argue that they are entitled to judgment in their favor on plaintiff's defamation claims because the statements were protected by qualified privilege and substantially true. Plaintiff maintains that Taylor lied when he:

- stated in a memorandum to Fersch that Lane admitted to looking at pornography on City computers;

- stated in a memorandum to Fersch that Lane looked at pornography approximately 30 times;

- stated in a memorandum to Fersch that Lane's viewing of web sites with pornography created a hostile working environment;

- stated to Nate Ellis, a newspaper reporter, that the images found on Lane's computer were "clearly" pornographic;

- informed the State of Ohio that Lane admitted to viewing the pictures in questions;

- informed the State of Ohio that Lane sexually harassed his female colleagues; and

- informed the State of Ohio that Taylor found the complaints about Lane's conduct sustained when he did nothing to investigate them and had no basis to assert that the complaints were sustained.

However, the only defamation allegation pleaded in the complaint is that Taylor's letter terminating Lane's employment was based on false or misleading information:

> On November 2, 2009, Defendant Taylor, acting in cooperation and concert with other Defendants and/or their agents, and based on false and/or misleading information supplied by, Defendant Fersch and others, issued a letter terminating Plaintiff Lane's employment with the city.

Compl. ¶ 35.[73]

Defendants maintain that the plaintiff's claim is barred by qualified privilege. To establish a qualified privilege, defendants must prove that (1) the publication was made in good faith, (2) there was an interest to be upheld, (3) the publication was limited in scope to that interest, (4) the publication was made on a proper occasion, and (5) the publication was done in a proper manner and to the proper parties. *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975). Defendants here are entitled to the qualified privilege. As an

---

[73] In his motion for summary judgment, plaintiff maintains that the statements at issue are statements made by Taylor to the Pickerington *Times-Sun* and to the State of Ohio. Plaintiff has offered no direct evidence that Taylor communicated with the reporter, Nate Ellis, who wrote a newspaper article about Pickerington firing Lane. Assuming for purposes of decision only that Taylor did make a communication to Ellis, the only statement the Pickerington *Times-Sun* newspaper article attributes to Taylor was that "[c]learly, it was pornography." Doc. 31-9 at PageID# 1224. The other statements made in the newspaper were apparently gleaned from documents in Lane's personnel file. Plaintiff maintains that not all of the images were pornographic and cites to Taylor's deposition to support his assertion that this statement defamed him. The article does not state that Taylor said *all* the images pornographic. He said it was clearly pornographic, and from the description of the photos in Taylor's deposition, some of the images were clearly pornographic. As a result, Taylor's alleged statement to Ellis cannot be the basis for a defamation claim. Falsity is an essential element to a libel action, and a true statement cannot be the basis for such an action. *National Medic Serv. Corp. v. E.W. Scripps Co*, 61 Ohio App.3d 752, 755 (Ohio App. 1989).

Plaintiff also relies on Taylor's statements in his report to the State of Ohio concerning Taylor's finding that sexual harassment complaints made against Lane were sustained and that plaintiff acknowledged looking at pornography on a city computer. Plaintiff argues that in his deposition, Taylor testified that he did not investigate the claims for sexual harassment and had no basis for suggesting that the complaints were sustained. The complaint, however, does not assert any allegations concerning Taylor's statements to the State of Ohio. Further, the communications would appear to be privileged. As an employer contesting an application for unemployment compensation, Pickerington had the right to communicate its reasons for firing Lane to the Ohio Bureau of Unemployment Compensation.

initial matter, I note that the "false statements" supplied by Fersch and "others" are never identified by plaintiff. Although plaintiff denies the allegations made by his co-workers concerning his conduct causing a hostile work environment, plaintiff has provided no evidence that Taylor knew that the statements provided to him during the course of his investigation were false. The publication was limited in scope and made on a proper occasion to proper parties given that the statements were made in an internal memorandum to the human resources director concerning the termination of an employee. The City of Pickerington has an interest in regulating conduct of its employees. Plaintiff has not offered any evidence showing that the communication Taylor made to Fersch was done in bad faith.

### VI.        Conclusion

Defendant City of Pickerington Personnel Appeals Board and City of Pickerington's March 28, 2013 motion for summary judgment (doc. 32) and defendants Mitch O'Brien, Michael D. Taylor and Linda Fersch's March 28, 2013 motion for summary judgment (doc. 35) are GRANTED. Plaintiff Paul Lane's March 28, 2013 motion for partial summary judgment (doc. 37) is DENIED.

The Clerk of Court is DIRECTED to enter JUDGMENT for defendants. This case is DISMISSED.

s/Mark R. Abel_____
United States Magistrate Judge